# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

ROBERT J. DADO, )
)
Plaintiff, )
)
vs. )    NO. 2:09-CV-8
)
GEORGE PABEY, et al., )
)
Defendants. )

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DE # 26), filed on April 1, 2010. For the reasons set forth below, the Defendants' Motion for Summary Judgment (DE # 26) is **GRANTED.** Accordingly, this case is **DISMISSED with prejudice** and the Clerk is **FURTHER ORDERED** to **CLOSE** this case.

<u>BACKGROUND</u>

Plaintiff, Robert Dado ("Dado"), filed an initial Complaint (DE # 1) against George Pabey ("Pabey"), the mayor of East Chicago[1], Charles Pacurar ("Pacurar"), the City Controller, and the City of East Chicago, Indiana ("City") on January 14, 2010. Dado then filed a First Amended Complaint (DE # 5) on February 4, 2010.

---

[1] Mayor Pabey's term came to an abrupt end upon being convicted of felony corruption charges in September of 2010. The current Mayor of East Chicago is Anthony Copeland.

Dado's amended complaint alleges that the Defendants violated Dado's rights to free speech and association under the First Amendment through 42 U.S.C. section 1983, and his right to equal protection of the laws under the Fourteenth Amendment, through 42 U.S.C. section 1981 and Title VII of the Civil Rights Act, as amended, 42 U.S.C. section 2000 et seq.

Dado's claims can be summarized as follows. Dado alleges that he was retaliated against for engaging in protected speech when he refused to take the lead on a project for the JET Program, stating that "he doesn't get paid enough to take the lead" and that he also engaged in protected speech when he complained to Mayor Pabey in 2006 about co-workers timekeeping practices. Dado also claims that his First Amendment rights were violated when he was discharged in retaliation for running as a mayoral candidate against Mayor Pabey in the 2007 primary election. Additionally, Dado claims that he was improperly discharged because of his race (white) and that he was paid less than other employees because of his race, in violation of 42 U.S.C. section 1981 and Title VII. Dado seeks to hold Pabey and Pacurar liable in both their individual and official capacities, and additionally claims that the City is liable under 1983 due to its unconstitutional municipal policy.

Defendants Pabey, Pacurar, and City (collectively "Defendants") filed the instant motion for summary judgment claiming that the individual defendants are entitled to qualified

immunity and, additionally, that the undisputed facts show that Dado cannot establish a prima facie case for any of his claims. Alternatively, Defendants argue that, even if Dado has established a prima facie case, he has not supplied material evidence showing Defendants' legitimate reasons for discharging him were pretextual.

Dado's attorney filed a motion to withdraw (DE # 29) shortly after Defendants' motion for summary judgment was filed. This Court, after much deliberation, and after allowing time for Dado to obtain new counsel, issued an order granting the motion to withdraw (DE # 36). This order also advised Dado of the consequences of failing to respond to a summary judgment motion, as Dado was proceeding *pro se*. Dado has not responded to Defendants' Motion for Summary Judgment. Accordingly, the motion is ripe for adjudication.


DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corporation. v. Catrett*, 477 U.S. 317, 322–23 (1986). In other words, the record must reveal that no reasonable jury could find for the

nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of

material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original). *See also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Facts

In determining what facts this Court should rely upon in ruling on the instant summary judgment motion, this Court considers the requirements of Local Rule 56.1.  This Rule requires the party seeking summary judgment to include a statement of material facts in the memorandum or appendix accompanying his summary judgment motion with appropriate citations.  This Rule also provides that the party responding to a motion for summary judgment must include a statement of genuine issues together with appropriate citations. Failure by the responding party to do so results in the Court accepting as true all properly supported facts presented in the moving party's statement of material facts.  N.D. Ind. L.R. 56.1. As Plaintiff has not responded, this Court assumes that the facts as claimed by the moving party and supported by admissible evidence

are admitted to exist without controversy. N.D. Ind. L.R. 56.1(b).
This Court has reviewed Defendants' statement of material facts and
finds that, with rare exception, they are adequately supported with
appropriate citations to admissible evidence. Therefore, the
supported facts are deemed true for purposes of this motion. The
facts set forth below are taken almost verbatim from Defendants'
statement of material facts.

### Dado's Hiring by the Pabey Administration

George Pabey became Mayor of East Chicago in late December
2004. Dado was first hired by the City of East Chicago in
September 2005, during the administration of Mayor George Pabey, as
an employee of the Department of Development and Planning. When
Plaintiff was first employed by the City, he had less than 10 years
of total work experience, none of which was related to recruiting
and job placement. Dado also had no prior management experience
within municipal government.

### Dado's Complaints about Christine Vasquez Clocking In

Plaintiff alleges that sometime in 2006 he complained to Mayor
Pabey about the timekeeping practices of Christine Vasquez, who was
an employee of the Storm Water Department under the Sanitary
District. Plaintiff acknowledges he had no responsibility to keep
track of other employees' time, and that he and Vasquez were not
generally privy to each other's work schedules or leave requests.
Plaintiff contends that during his 2006 conversation with Mayor

Pabey, the Mayor directed Plaintiff not to worry about other employees and to mind his own business. Plaintiff, however, disregarded the Mayor's directions and discussed Vasquez's "clocking in" practices with his co-workers Irene Viera, Nneka Simmons, Kenda Jackson, and Nikki Mika "on almost a daily basis for an extended period of time in 2007."

Dado's Transfer to the JET Program

In January 2007, Plaintiff was transferred from the Department of Development and Planning to the Department of Human Resources to participate in the City's Job, Education, and Training ("JET") Program. The purpose of the JET Program is to help match jobs with job-seeking individuals, to design or locate training programs for such individuals, and to help individuals locate resources to obtain a GED.

The JET Program is not a separate City department but is a program generally within the City's Human Resources Department ("HR"). The City staffs the JET Program with City employees from various City departments, such as HR and the Storm Water Department, as well as independent contractors. While Plaintiff was assigned to the JET Program, he was paid by HR and reported to HR's department head.

Dado's Weekend Mayoral Candidacy

Shortly before noon on Friday, February 23, 2007, Plaintiff filed papers with the Lake County Election Board declaring his

candidacy for mayor of the City of East Chicago in the 2007 primary election.  The following Monday morning, on February 26, 2007, he filed papers withdrawing his candidacy.  During his short-lived candidacy, Plaintiff never raised any campaign money, never held any town hall meetings, never held any fundraisers, never went door-to-door campaigning, and never sent even a single e-mail to anyone about his mayoral candidacy.  Plaintiff never discussed his candidacy with Mayor Pabey, Gomez or Pacurar, and Gomez never knew that Plaintiff had filed candidacy papers for mayor.

### Dado's Performance in the JET Program

While working in the JET Program, Plaintiff's job description entailed helping East Chicago residents find employment with local employers, which involved meeting program clients as well as potential employers, and included aiding in the process of helping disadvantaged people find employment.  Cathy Delgado, an outside consultant to the City, was the person responsible for coordinating assignments within the JET Program.  When British Petroleum ("BP") requested the JET Program to locate potential employees, Delgado assigned Plaintiff to take the lead in addressing BP's request during a staff meeting on February 25, 2008.

Plaintiff refused to perform the assignment and never gave Delgado a reason for doing so, other than stating that "he doesn't get paid enough to take the lead."  Human Resources Director Rich Gomez later met with Plaintiff concerning his refusal to take the

lead on the BP Project, yet Plaintiff never told Gomez why he was refusing to take the lead.

<u>Dispute Over Early Paycheck Request and Termination</u>

Approximately a month later, on March 19, 2008, Gomez informed Plaintiff that City Controller Charlie Pacurar had denied Plaintiff's request to receive his paycheck a day early. Gomez and Gomez' secretary, Judy Nava, who was standing nearby, both believed they heard Plaintiff say in response, "Ok, well, Charlie can go f-- - himself."

Gomez then summoned Plaintiff into his office and gave him a three-day suspension based on Plaintiff's response and told Plaintiff he would review his employee discipline file and meet with him on Monday. Plaintiff was "a little upset" and he stood up and said something to Gomez along the lines of "we'll be meeting later" or "I'll see you on Monday." It is also undisputed that Gomez felt threatened by Plaintiff's gestures, temperament, tone, stance and comments which took place in Gomez' office, and Gomez filed a police report concerning the incident.

After Plaintiff left his office, Gomez consulted with Pacurar about discharging Plaintiff due to the threat and what Gomez perceived to have been an effort by Dado to physically intimidate him. The following Monday, March 24, 2008, Gomez met with Plaintiff and discharged him due to intimidation. Mayor Pabey did not participate in the decision to terminate Dado, and Gomez

informed Mayor Pabey of Dado's termination only after the fact. Dado had no reason believe that Gomez did not like him.

<u>Plaintiff's Disparate Wage Payment Allegations</u>

The City's official personnel policies prohibit racial discrimination in City employment. Dado (who is white) now claims he was paid less than others because of his race, based on four allegedly similarly-situated, non-white employees: (1) Christine Vasquez, (2) Nelson Vargas, (3) Sandra Maldonado, and (4) Jose Bustos.

<u>Christine Vasquez</u>

In contrast to Dado's more limited work experience, Vasquez had more than 22 years of total work experience in Chicago law firms before coming to the City, including seven years as a law firm's coordinator of affirmative action. Vasquez was first employed by the City as the Human Resources department head in December 2004, upon Mayor Pabey taking office.

When Vasquez was appointed to the City Council in March 2005, she stepped down as the Human Resources director and transferred to the Storm Water Department under the Sanitation District as a manager. Vasquez's salary was established by the Sanitation District. In 2007, the Sanitation District loaned out Vasquez to the JET Program and continued to pay her according to the salary set by the Sanitary District Board. Moreover, she reported her time to the Sanitary District during this period.

## Jose Bustos

Before coming to work for the City, Jose Bustos had many years of experience as an organizer working for the Service Employees International Union and before that time worked with the children of the City.[2] Bustos was initially hired by the City in a division manager position as the Director of Recreation within the Parks Department. Bustos' salary was established at the time he was initially hired as a division manager in the Parks Department. Later, Bustos laterally transferred to the JET Program to be its division manager and supervise its employees, including Dado. Because his transfer was lateral, Bustos kept the same salary he was earning as a division manager in the Parks Department.

## Nelson Vargas and Sandra Maldonado

Neither Nelson Vargas nor Sandra Maldonado ever participated in the JET Program. The only employees to participate in the JET Program were Cathy Delgado, Alicia Rodriguez, Gilbert Diaz, Irene Viera, Robert Dado, Christine Vasquez, Kenda Jackson, and Jose Bustos.

---

[2]While the Court accepts that Bustos "worked with the children of the City" it is entirely unclear in what capacity he performed such work.

The individual defendants Pabey and Pacurar have raised a qualified immunity defense arguing that Dado does not have a "clearly established" right that has been violated and, even if a jury were to determine Defendants violated Dado's rights, those rights were not clearly established at the time the action occurred.

The defense of qualified immunity is "designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir. 1991)(internal quotations omitted). The doctrine was aptly exlained by the Seventh Circuit in *Casteel v. Pieschek* as follows:

> Under the doctrine of qualified immunity, "public officials performing discretionary functions are protected against suits from damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Doe v. Bobbitt*, 881 F.2d 510, 511 (7th Cir.1989) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "In determining whether the right alleged to have been violated was 'clearly established,' the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation." *Warlick v. Cross*, 969 F.2d 303, 309 (7th Cir.1992) (citation omitted). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034,

> 3039, 97 L.Ed.2d 523 (1987). The plaintiff
> bears the burden of showing that the
> constitutional right allegedly violated was
> clearly established "before the defendant
> acted or failed to act." *Rice v. Burks*, 999
> F.2d 1172, 1174 (7th Cir.1993) (citing
> *Rakovich v. Wade*, 850 F.2d 1180 (7th Cir.),
> cert. denied, 488 U.S. 968, 109 S.Ct. 497, 102
> L.Ed.2d 534 (1988)). This requires the
> plaintiff to offer either a closely analogous
> case or evidence that the defendants' conduct
> is so patently violative of the constitutional
> right that reasonable officials would know
> without guidance from the courts. *See Rice*,
> at 1173–74; *McDonald v. Haskins*, 966 F.2d 292
> (7th Cir. 1992).

*Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993). The plaintiff may rely only on the law as it existed at the time the defendant took the action in question. *Upton*, 930 F.2d at 1212.

Dado has failed to provide any closely analogous cases or other evidence which show any of Dado's clearly established constitutional rights were violated by Defendants. Furthermore, it does not appear that any of Dado's constitutional rights were violated. Dado has not sustained his burden and, accordingly, the individual Defendants, Pabey and Pacurar, are entitled to qualified immunity on all of Dado's claims as a matter of law.

Dado's Claims Against the City of Each Chicago and Pabey and Pacurar in Their Official Capacity

First Amendment Speech Claims

Dado alleges two instances where he participated in "protected speech or conduct" and he claims that he was discharged in

retaliation for engaging in that speech or conduct. The two instances are 1) Dado's refusal to take the lead on a project for the JET Program of which the only reason he gave for refusal was the statement "he doesn't get paid enough to take the lead" and 2) his complaint to Mayor Pabey in 2006 about an employee's timekeeping and subsequent discussions about the topic with co-workers which lasted for an extended period of time in 2007. Dado cannot meet the required elements to sustain his First Amendment claims.

> A § 1983 claim for retaliation in violation of First Amendment rights in the public employment context involves a three-step analysis. First, the court must determine whether the employee's speech was constitutionally protected under the *Connick-Pickering* test. Second, the plaintiff must establish that the speech was a substantial or motivating factor in the retaliatory action. Third, the defendant has an opportunity to establish that the same action would have been taken in the absence of the employee's protected speech.

*Sullivan v. Ramirez*, 360 F.3d 692, 697 (7th Cir. 2004)(citations omitted). Dado's claims fail the first and second steps of the analysis.

### Dado's Speech was not Constitutionally Protected

Whether or not speech is constitutionally protected is a question of law. *Sullivan*, 360 F.3d at 698, 701. The *Connick-Pickering* analysis provides that speech is constitutionally protected if "(1) the employee spoke as a citizen on matters of

public concern, and (2) the interest of the employee as a citizen in commenting upon matters of public concern outweighs the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1123 (7th Cir. 2009)(quoting *Sigsworth v. City of Aurora,* 487 F.3d 506, 509 (7th Cir. 2007); *Sullivan*, 360 F.3d at 698.

As to the first prong of the two part analysis, the Supreme Court held in *Garcetti v. Ceballos*, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. 410, 421 (2006).

Assuming that Dado's refusal to perform the task assigned to him is a statement, this statement is clearly made pursuant to his official duties, as was his comment that "he doesn't get paid enough to take the lead." This Court finds no distinction between a statement made while performing official duties and a "statement" made by refusing to perform official duties. Without more, Dado was simply non-compliant with his official duties, and his speech is not constitutionally protected.

With regards to Dado's complaints about timekeeping, even if Dado can survive the first prong of the analysis, that he was speaking as a citizen on a matter of public concern, his speech is

not protected because Dado's interest as a citizen in commenting upon matters of public concern does not outweigh the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees. Several relevant factors for courts to consider in balancing the interests involved are:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers;
> (2) whether the employment relationship is one in which personal loyalty and confidence are necessary;
> (3) whether the speech impeded the employee's ability to perform her responsibilities;
> (4) the time, place and manner of the speech;
> (5) the context in which the underlying dispute arose;
> (6) whether the matter was one on which debate was vital to informed decision-making; and
> (7) whether the speaker should be regarded as a member of the general public.

*Sullivan*, 360 F.3d at 701.

In *Sullivan* two public employees kept their own unofficial notes and records of other employees' time. *Id.* at 694-95. The two employees continued their unofficial record keeping even after the department head instructed them to stop. *Id.* at 695. The two were discharged (or sent home and told they would be discharged) after the department head learned that they were keeping records of his own schedule and time.[3] *Id.* at 695-96. Applying the above factors, the Seventh Circuit held that the two employees' speech

---

[3]Both were called back to work shortly thereafter.

involved in their record keeping practices was not constitutionally protected. *Id.* at 700-701. In making its decision the court noted that neither employee "had any responsibility to keep time for other employees," one employee was "personally directed to stop tracking other employees' time," and neither employee was "privy to other employees' work schedules or requests for leave." *Id*. at 701.

Like in *Sullivan*, Dado was not responsible to keep time for other employees, he was directed by Pabey to not worry about other employees and mind his own business, and he was not privy to Vasquez's schedule. *Sullivan* is analogous to this case and there is no reason to depart from its sound reasoning. Dado's speech, like the speech at issue in *Sullivan*, was not constitutionally protected, as it too fails the *Pickering* balancing test.

Dado Cannot Establish His Speech was a Substantial or Motivating Factor in His Termination

Even if Dado's speech was constitutionally protected, Dado's First Amendment speech claim fails because he cannot establish that his speech was a substantial or motivating factor in his termination. A plaintiff must establish a causal link between the protected expression and the adverse employment action. *Spiegla v. Hull*, 371 F.3d 928, 941 (7th Cir. 2004). Substantial time lapses between the protected expression and the adverse employment action provide counter-evidence of a causal connection. *Johnson v. Univ. of Wisconsin-Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995)(abrogated

-17-

on other grounds in *Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004); *see also Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111, 1115 (7th Cir. 1992). Also, "the employer must have had actual knowledge of the protected activity in order for its decisions to be retaliatory; it is not sufficient that [an employer] could or even should have known about [an employee's] complaint." *Nagle*, 554 F.3d at 1121-22 (internal citations and quotations omitted).

Here Dado was discharged approximately one month after he refused to perform his task assigned for the JET Program and two years after his initial complaint to Pabey about Vasquez's "clocking in" practice. Furthermore, Dado did not make known to Defendants his reason for refusing to perform his assigned task in the JET Program, thus precluding the finding of a causal connection between Dado's protected speech and termination. Dado has not established a causal connection between his speech and termination.


First Amendment Politically Motivated Discharge Claim

Dado claims he was improperly discharged for political reasons based on his candidacy for mayor in the 2007 primary, which lasted a weekend. To establish a prima facie case of politically motivated discharge, Dado must show that his conduct was constitutionally protected, and that the protected conduct was a substantial or motivating factor in the employment decision. *Zerante v. DeLuca*, 555 F.3d 582, 584-85 (7th Cir. 2009).

Dado can meet the first prong of the prima facie case, but his claim fails at the second prong. Dado did not participate in any meaningful campaign activity during his short-lived candidacy. Furthermore, Gomez, who terminated Dado, never knew Dado had filed papers for candidacy and Dado never discussed his candidacy with Pabey, Pacurar or Gomez. Simply filing papers for candidacy which are then withdrawn less than a business day later is not enough evidence to show Defendants knew about Dado's political activities. Dado failed to establish that Defendants were aware of his mayoral campaign. In the absence of some proof of knowledge of the campaign, Dado can not demonstrate that the protected conduct was a substantial or motivating factor in the Defendants' employment decision, over a year later.

Racial Discrimination Claims

Dado claims he was also improperly discharged because of his race (white) and that he was paid less than other employees because of his race, in violation of 42 U.S.C. section 1981 and Title VII. The Seventh Circuit Court of Appeals has noted that, "Although § 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009)(quoting *Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922, 940 (7th Cir. 1996)). Title VII provides that it is

unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens..." 42 U.S.C. § 1981.

Dado can demonstrate discrimination by either direct proof of discriminatory intent or the method of indirect proof described in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Dado has supplied no direct proof of discrimination, and therefore must rely on the indirect method of proving discrimination. Under the indirect method:

> [A] plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a 'legitimate, nondiscriminatory reason' for discharging the plaintiff. Finally, 'the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were

-20-

a pretext for discrimination.
*Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998) (quoting *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 302-03 (7th Cir. 1996)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Generally, under the *McDonnell Douglas* framework, Plaintiff must first establish a prima facie case of discrimination by presenting evidence that: 1) he was a member of a protected class; 2) he was qualified for the job in question or was meeting the employer's legitimate performance expectations; 3) he suffered an adverse employment action; and 4) he was replaced by or treated more favorably than similarly situated employees outside the class. *Foster v. Arthur Andersen*, *LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999). However, in a reverse discrimination case such as this one, the first element is replaced with a requirement that the plaintiff show "background circumstances" suggesting that the employer discriminates against the whites or evidence that "there is something 'fishy' about the facts at hand. *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 820 (7th Cir. 2006).

<u>Dado has Failed to Show "Background Circumstances" or "Fishy"</u>
<u>Evidence to Meet the First Element of a Prima Facie Case</u>

Examples of "background circumstances" or "fishy" facts include evidence of 1) schemes to fix performance ratings to the detriment of plaintiffs, 2) that the hiring system seemed rigged against plaintiffs because it departed from the usual procedures in

an unprecedented fashion, 3) that plaintiffs were passed over despite superior qualifications, 4) that the person ultimately hired was clearly less qualified, 5) that the hiring authority expressed intense interest in hiring a minority, or 6) there was a pattern of hiring minorities in the past. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 455 (7th Cir. 1999). Dado has failed to point to any "background circumstances" or "fishy" evidence such as this.

<u>Dado has Failed to Show that He was Replaced by or Treated Disparately Than a Similarly Situated Hispanic</u>

Dado must either show that he was replaced by or treated less favorably than a similarly situated employee outside of the protected class to meet the fourth prong of the prima facie case. He has produced no evidence that anyone replaced him. Dado does alleges that there were four similarly situated, non-white employees who were paid more than he was and/or treated more favorably than he was: 1) Christine Vasquez, 2) Nelson Vargas, 3) Sandra Maldonado, and 4) Jose Bustos.

"An employee is similarly situated if the employee is 'comparable to the plaintiff in all *material* respects.'" *Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008) (quoting *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846-47 (7th Cir.2006)). "In evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees '(i) held the same job description, (ii) were

subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered these latter factors in making the personnel decision.' " *Id.* at 631 (quoting *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir.2005)).

None of the four employees named by Dado are similarly situated to Dado. Neither Nelson Vargas nor Sandra Maldonado ever participated in the JET Program. Vasquez and Bustos both came in to the JET Program with more total work experience than Dado. In addition, Vasquez had more relevant work experience than Dado. Also, both Vasquez's and Bustos' salaries were established by their respective departments before moving into the JET Program. Finally, as to Vasquez, her time was reported to the Sanitary District which she was transferred from into the JET Program. In no way were any of the four employees named similarly situated to Dado. Dado has not established a prima facie case of discrimination in violation of either Title VII or section 1981.

<u>Dado Has Not Demonstrated Pretext</u>

Even if Dado had demonstrated a prima facie case, his claim would fail because Dado has not produced evidence that Defendants' legitimate, non-discriminatory reason for discharging him was pretextual, as the *McDonnell Douglas* burden shifting analysis requires. A pretext is a deliberate falsehood and "[a]n honest mistake, however dumb, is not, and if there is no doubt that it is

-23-

the real reason it blocks the case at the summary-judgment stage."
*Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006).
Defendants' proffered reason for discharging Dado is that he
intimidated Gomez and Gomez felt threatened by Dado's words and
actions. Dado has not provided any evidence to rebut this or cast
doubt on this being the true reason for his discharge.


Dado Has Not Demonstrated an Official Policy of Discrimination as
is Required to Establish Municipal Liability

Dado cannot prevail against the City of East Chicago under
section 1983 unless he proves the existence of an unconstitutional
municipal policy. *City of St. Louis v. Paprotnik*, 485 U.S. 112,
128 (1988). Such unconstitutional municipal policy must be an
"official policy" which may be shown by any one of three different
ways: 1) an express policy; 2) a widespread practice that, although
not authorized by written law or express municipal policy, is so
permanent and well settled as to constitute a custom or use with
the force of law; or 3) a decision made by a municipal official who
has "final policymaking authority." *Wragg v. Village of Thornton*,
604 F.3d 464 (7th Cir. 2010); *Paprotnik*, at 122-24; *Pembaur v. City
of Cincinnati*, 475 U.S. 469, 479-83 (1986); *Monnell v. Dept. of
Soc. Sens. Of City of New York*, 436 U.S. 658, 690-91 (1978).

Dado has not alleged or shown any evidence of an express
discriminatory policy. On the contrary, the evidence shows that
the City has an official policy prohibiting discrimination. Dado

also has not alleged or shown any evidence of a widespread practice of discrimination.  Neither can Dado show that the decision to terminate him was made by a municipal official with "final policymaking authority."

Whether a municipal official has "final policymaking authority" is a question of state law. *Paprotnik*, 485 U.S. at 124-25.  It is conceded by Defendants that Mayor Pabey is a municipal official with "final policymaking authority."  But Dado has produced no evidence that the policymaker, in this case Mayor Pabey, took any action or was involved in the decision to terminate him.  Defendants have produced evidence to the contrary. Accordingly, Dado's claim for municipal liability against the City of East Chicago fails.


CONCLUSION

Dado has not supplied sufficient evidence on any of his claims to prevent summary judgment, and for the aforementioned reasons the Defendants' motion for summary judgment is **GRANTED.**  Accordingly, this case is **DISMISSED with prejudice** and the Clerk is **FURTHER ORDERED** to **CLOSE** this case.


DATED: March 8, 2011                    /s/ RUDY LOZANO, Judge
                                        United States District Court